**Michaele K. MARX, Petitioner,**

v.

**Russell K. BENZEL, Respondent.**

**No. S–10996.**

Supreme Court of Alaska.

March 25, 2003.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

### Opinion & Order

1. At issue is the superior court's order refusing to disqualify William Brattain from representing the defendant Russell Benzel. Michaele Marx sought the disqualification of Brattain because he had previously consulted with her as her potential attorney on a substantially related legal matter.

2. The undisputed facts are that Benzel contacted Brattain about representing his friend Marx who was in jail in Anchorage. Brattain had a two-hour consultation with Marx. Two subjects that were covered were Marx's complaint that she was not receiving psychological assistance to help her in overcoming the conditions that led to her incarceration and questions concerning the estate of her late husband.

3. The disputed facts concern discussions about a house that Marx had conveyed to Benzel. Marx claims that she gave Brattain "all of the details regarding my dispute with Mr. Benzel over the ownership of the house." Brattain says that the dispute with Benzel came up at the end of the consultation when Marx said she had "sort of a problem" with Benzel regarding the transfer of the house. Brattain asked her the nature of the problem and according to Brattain she said "I don't think he paid me enough money for it but I can't remember all of the details because I don't have any of the paperwork." According to Brattain he then said "Michaele, I was hired by Russ to help you with the conditions of your incarceration and to see if there was anything I could do regarding your husband's estate. I don't know anything about this house deal and I don't want to know anything about the house deal because it might be a conflict."

4. Even though what was said about the house is disputed, it is undisputed that on the same day of the meeting Brattain (apparently after talking to Benzel by telephone) prepared an "engagement letter" addressed both to Marx and Benzel that was a proposed contract to employ Brattain as counsel for Marx. One subject of the proposed engagement letter included reviewing and analyzing the transfer of property from Marx to Benzel, apparently as a mediator. The engagement letter characterizes Marx's claim concerning the house in a manner that limits the dispute to "amount, value and adequacy of the consideration. . . ." Recognizing the potential conflict of interest, the engagement letter states that Marx and Benzel "agree that I will not represent either Michaele or Russell in the event of an actual controversy." Marx did not assent to the engagement letter and apparently had no further contact with Brattain.

5. Marx subsequently sued Benzel seeking to set aside the deed to the house. Thus

this case represents the "actual controversy" as to which Brattain prospectively agreed that he would not represent Benzel (or Marx). Benzel defaulted and a judgment was rendered in favor of Marx. The judgment was set aside on November 15, 2002. A few days later Brattain entered his appearance for Benzel. Shortly thereafter Marx hired counsel, Robert Sparks, who promptly wrote to Brattain, asking him to withdraw as counsel for Benzel because of his prior contact with Marx. Brattain asked that this issue be held in abeyance until after the first of the year as he was about to go on vacation. On January 14, 2003, the current motion to disqualify Brattain was filed. At a hearing held February 24, 2003, the superior court denied the motion. Marx petitions for review from this order.

6. We grant the petition and reverse the order denying the motion for disqualification based on Rule 1.9(a) of the Alaska Rules of Professional Conduct.

7. Rule 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

We discussed this rule in *Griffith v. Taylor*, 937 P.2d 297, 301 (Alaska 1997), recognizing that a lawyer may not represent a new client in a substantially related matter in which the new client's interests are materially adverse to the interests of the former client. Here the substantial relationship test is met, because the conveyance of the house was discussed between Marx and Brattain. Only the level of detail is disputed. The question is whether Marx is a "former client." The answer is "yes" even though Brattain was not retained by Marx.

8. *Griffen v. East Prairie School District*, 945 F.Supp. 1251, 1254 (E.D.Mo.1996), presents an analogous situation. There was an initial consultation, the lawyer prepared a retainer contract but it was never signed, and the lawyer was not retained. The court held that the similar Rule 1.9 of the Missouri Rules of Professional Conduct governed the relationship. The prospective client with whom the lawyer conferred was protected as a "former client" under Rule 1.9 even though the lawyer was not ultimately retained. The court observed that the "relationship is established when the client believes that she is consulting a lawyer in his professional capacity and manifests her intention to seek professional legal advice." That was the situation in the Marx/Brattain meeting.

9. If there is former representation on a substantially related matter the former client is entitled to the protection of Rule 1.9(a) without showing that confidential information was actually disclosed. *Griffith*, 937 P.2d at 301; *Griffen*, 945 F.Supp. at 1254. Thus we have no occasion to inquire as to whether confidential information was actually disclosed during the Marx/Brattain meeting.

10. In conclusion, the petition for review is GRANTED, the order denying the motion for disqualification is REVERSED, and this case is REMANDED with directions to grant the motion for disqualification and for further proceedings.

Entered by direction of the court.